HARRISON F. HIX *vs.* WESLEY GILES.

Lincoln. Opinion February 19, 1908.

*Exceptions. Same Must Show Error. R. S., chapter 93, sections 3, 4.*

When a party takes exceptions to rulings of the presiding Justice it is incumbent on such party to show affirmatively that there was error in such rulings and that he is aggrieved thereby.

In the case at bar, which was an action of replevin to recover a horse described in a Holmes note given by one Merrill to one Miller it appeared that immediately after its execution the note was indorsed in blank by the payee and delivered to the plaintiff, and the next day duly recorded in the office of the town clerk ; that subsequently Merrill surrendered possession of the horse to Miller and the defendant afterward purchased the horse of Miller without knowledge of the Holmes note. The presiding Justice instructed the jury to return a verdict for the defendant and also to find specially whether or not the plaintiff authorized Miller to sell the horse. To these instructions the plaintiff excepted.

*Held:* That it does not affirmatively appear from the exceptions that the ruling ordering a verdict for the defendant was erroneous for the reason

that the exceptions fail to show what the issue was and upon what ground the ruling was based, and for the further reason that the jury specially found the plaintiff authorized Miller to sell the horse.

On exceptions by plaintiff. Overruled.

Replevin to recover possession of a certain black mare described in a Holmes note given by one Charles P. Merrill to one H. M. Miller and which said note immediately after its execution was indorsed in blank by said Miller and by him delivered to the plaintiff as his property. After the delivery of the note to the plaintiff he had the same duly recorded in the town in which the maker, Merrill, then resided. Afterward said Merrill delivered said mare to said Miller who sold the same to the defendant. The defendant had no knowledge of the Holmes note when he purchased the mare.

Tried at the October term, 1907, of the Supreme Judicial Court, Lincoln County. (The record does not show what the pleadings were or what question was raised by the issue between the parties.) At the conclusion of the evidence the presiding Justice "instructed the jury to find a verdict for the defendant, and instructed them that the first thing for them to do on retiring was to sign the verdict for the defendant which was already prepared and exhibited to them. That after signing such verdict they should answer the following question : ' Did the plaintiff Mr. Hix give Mr. Miller rightly to understand that he might sell the mare described in the writ? ' " The jury answered the question in the affirmative. The plaintiff excepted to the aforesaid rulings and instructions.

The case fully appears in the opinion.

*R. I. Thompson and Arthur S. Littlefield*, for plaintiff.

*J. W. Brackett*, for defendant.

SITTING : WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

WHITEHOUSE, J. This is an action of replevin to recover possession of the black mare described in the following Holmes note, viz :

"$200.00 Rockland, Maine, Sept. 11, 1906.

Four months after date, for value received I promise to pay to the order of H. M. Miller, two hundred dollars with interest at six per cent, until paid, the same being for one roan mare so

called the Hix mare and one black mare so called the Knight mare and one new Concord wagon and one Bangor prison wagon, so called Orbeton wagon, which horses and wagons I have this day bought of said H. M. Miller and said horses and wagons is to remain the property of said H. M. Miller until said sum and interest are paid, and it is hereby stipulated and agreed that no right of redemption shall exist after breach hereof by non-payment at maturity of this note.

(Signed)   Charles P. Merrill."

Immediately after its execution this note was indorsed in blank by the payee, H. M. Miller, and delivered to the plaintiff Hix as his property. The next day the note was duly recorded in the office of the town clerk of Boothbay Harbor, where Charles P. Merrill, the maker, then resided.

In December 1906, Merrill sold out his livery business delivered the horse in question to Miller and left the town of Boothbay Harbor. Soon afterward the defendant Giles purchased the horse in question of Miller without knowledge of the Holmes note.

The defendant contended and introduced evidence tending to prove that after the horse came into Miller's possession, the plaintiff Hix told Miller to take the horse in question and other property termed the "Merrill stuff," sell it and pay the note. The plaintiff denied that he had any such conversation with Miller.

The Holmes note was owned by the plaintiff and produced by him at the time of the trial.

The presiding Justice directed the jury to return a verdict for the defendant. He instructed them that it would be their first duty on retiring to their room to sign the verdict for the defendant which had been prepared for that purpose, and that after signing such verdict they should answer the following question, viz:   "Did the plaintiff Mr. Hix give Mr. Miller rightly to understand that he might sell the mare described in the writ?"

This question the jury answered in the affirmative, and the case comes to the Law Court on exceptions to these rulings and instructions of the presiding Justice.

It was incumbent on the plaintiff to show affirmatively that there was error in these rulings and that he is aggrieved thereby. This, in the opinion of the court he has failed to do. The evidence is not reported and the exceptions fail to show what the pleadings were or what question was raised by the issue between the parties. It does not appear that the question of the general or special property in the horse replevied was raised by the issue tendered. If only the general issue of non cepit was pleaded by the defendant, the question of the taking only was put in issue. *Vickery* v. *Sherburne*, 20 Maine, 34 ; *Pope* v. *Jackson*, 65 Maine, 162. For aught that appears the ruling of the presiding Justice ordering a verdict for the defendant may have been based upon evidence showing that no demand was made for the horse and that in fact there was no taking or detention by the defendant ; and there is nothing in the exceptions to show that such a ruling would have been erroneous. It is accordingly contended in behalf of the defendant that the question elaborately argued by the plaintiff's counsel respecting the title to, or right to the possession of the horse does not necessarily arise in the discussion before the Law Court.

But the argument of plaintiff's counsel proceeds upon the assumption that the ruling of the presiding Justice was based upon the conclusion that the defendant had a right to the possession of the horse ; and it is insisted that upon the facts and circumstances of this case and the provisions of our statutes requiring Holmes notes to be recorded, this conclusion of the presiding Justice was unwarranted and the ruling erroneous.

It has been seen from the statement of facts, however, that the plaintiff's name does not appear in the Holmes note or in the indorsement of the note, and although it appears from the exceptions that the note was duly recorded, it is not stated that the "indorsement in blank" was also recorded. But if such an indorsement could be held to operate as an assignment of a mortgage and it had been duly recorded, it would have contained no reference to the plaintiff and given the defendant no information in regard to the plaintiff's claim upon the horse. It is admitted that the defendant purchased the horse of Miller without any knowledge of the

Holmes note. It is therefore insisted that the defendant, as an innocent purchaser without notice of the plaintiff's unrecorded claim, acquired title to the horse, and a right to the possession of him, even though the sale by Miller was not expressly authorized by the plaintiff, subject only to Merrill's right to redeem. In support of this contention, the defendant cites *Ramsdell* v. *Tewksbury*, 73 Maine, 197. In that case a promissory note was secured by a separate mortgage of personal property and it was held that a separate transfer of the mortgage simply by delivery does not authorize such assignee to maintain an action of replevin in his own name to recover the property. In the opinion the court say: "The title resting in the mortgage, nothing but an assignment of the mortgage could transfer the legal title of the mortgagee to the assignee."

"The statute contemplates an assignment and a record thereof where the mortgage itself is recorded. (R. S., ch. 93, sects. 3 and 4.) It could not be recorded unless in writing. The assignment is for the benefit of all parties; to inform the mortgagor and his voluntary or involuntary assignees to whom tender shall be made for redemption; and to relieve the mortgagee of all trouble after he has parted with his interest." The defendant contends that it was the intention of the legislature to bestow upon Holmes notes all the legal characteristics and incidents pertaining to a mortgage of personal property, including the written assignment and a record of it.

On the other hand the plaintiff contends that the title and right of possession passed from Miller to. the plaintiff by virtue of the delivery of the Holmes note, with the blank indorsement upon it, and that Miller then had no title which he could transfer to the defendant.

But it is unnecessary to determine the question whether the defendant acquired title or right of possession without the plaintiff's consent, for the reason already stated that the exceptions fail to show affirmatively upon what ground the presiding Justice based his ruling, and for the further reason that the jury returned a special finding that the plaintiff authorized Miller to sell the horse.

It is accordingly the opinion of the court that the entry must be,

*Exceptions overruled.*